PHILIP D. RAILSBACK *et al.*

*v.*

PHILIP A. WILLIAMSON *et al.*

1. RESULTING TRUST—*evidence to show.* Where a guardian appointed by will loaned money, taking a note secured by a mortgage payable to himself, he being described therein as executor of the estate of the deceased father of his wards, it was held that this was by no means conclusive evidence that the money loaned was that of his wards, and on bill filed by them many years after to reach the land after foreclosure of the mortgage, and its purchase by the guardian, where it appeared that the guardian had accounted for all the money shown to have come to his hands, with interest, and settled with the probate court, procured his discharge and paid all taxes on the land with his own money, it was *held*, that no relief could be granted thereon, and the bill was dismissed.

2. GUARDIAN AND WARD—*clear proof required to impeach guardian's account.* After the lapse of many years from the final settlement of a guardian with his wards after their majority, satisfactory evidence will be required to show that he holds funds in his hands not accounted for in his settlement.

3. CHANCERY—*clear proof required when claim is stale.* A court of equity will not readily lend its aid to establish a stale claim made many years after the transaction out of which it arises, and after the death of the party whose estate is sought to be charged, without the clearest proof of its justness.

APPEAL from the Circuit Court of Tazewell county; the Hon. JOHN BURNS, Judge, presiding.

Messrs. ROBERTS & GREEN, for the appellants.

Mr. C. J. ELLIOTT, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

In 1837, George Miller, by his last will and testament, appointed Thomas F. Railsback, since deceased, guardian of his two children, Elizabeth and Philip Miller. After the death of George Miller, which occurred shortly after the making of the will, the guardian appointed assumed the trust imposed by the will and entered upon its discharge. According to the stipulation found in the record, there came to the hands of the guardian at different times funds belonging to his wards amounting in the aggregate to $3700.53, all of which he accounted for to the probate court, together with the interest and proceeds. On the 13th day of May, 1850, Elizabeth, who had then intermarried with Stephen A. Williamson, had become of age, when her guardian made a final settlement of the funds in his hands before the probate court, and on producing a receipt in full for the amount found to be due to her, on such settlement, it was ordered by the court that the guardian stand discharged from further duties in that behalf. On the 7th day of December, 1857, after Philip Miller, who is one of the complainants, had become of age, he had an accounting with his guardian, concerning his acts as such, and on producing to the court a receipt from his ward for all that was found to be due to him, it was ordered that the guardian stand discharged from all further duties in regard to his trust. That was the end of all proceedings had in the probate court concerning the estates of the wards. In 1853, Elizabeth died, leaving her surviving two children, Philip A. Williamson and Ellen Williamson, who, with Philip Miller, the surviving ward, are complainants in this bill.

The matters set forth in the bill, upon which the right to relief is predicated, may be succinctly stated : In 1846, Thomas F. Railsback loaned to one Augustus A. Howell the sum of $150, and as security took a mortgage on the land involved in this litigation. It is charged, the funds used in making that loan were funds belonging to his wards. The note taken was made payable to "Thomas F. Railsback, executor of the estate of George Miller, deceased," and so he was described in the mortgage. Default having been made in payment of the sum secured, Thomas F. Railsback, describing himself as in the note and mortgage, filed a bill to foreclose the mortgage, and such proceedings were had thereon that a sale of the mortgaged premises was ordered, at which he became the purchaser of the land described in the mortgage, and thereafterwards treated the land as his own. The object of the bill is to have established, in favor of complainants, a resulting trust in the land and for an account of the rents and profits against the devisees and subsequent purchasers in possession. On the hearing, the court dismissed the bill as to Philip Miller because of his *laches* in challenging the validity of the sale of the land to his guardian, but decreed relief as prayed for in favor of the heirs of the deceased ward. Philip Miller, as well as defendants, have assigned errors on the record.

There is one view we think is conclusive of the case, and that is, no satisfactory evidence was produced that the money loaned to Howell belonged to the estate of the wards. The fact their guardian took the note to himself as executor of their father's estate, by no means affords any conclusive evidence of what funds were used in making the loan to Howell. He was not the executor who administered the estate. The testator died in Tennessee, and the executor named in the will settled the estate under the laws of that State, and paid over the funds due the heirs to their guardian, who seems to have resided in this State at the time. The proof is, the guardian had money of his own to loan, and there is testimony that in another transaction, he took the evidence of the indebtedness to himself in

the same way from another party. What reason he may have had for so doing is a matter of no consequence. It distinctly appears that from the time Howell left the State, which was some time before the mortgage was foreclosed, although Railsback paid all taxes on the land through a series of years before any final settlement was made with his wards, he never, in any of his reports to the probate court, charged them with such taxes, nor did he treat the land, at any time, or the money loaned to Howell, as any part of the estate of his wards. On the contrary, he always acted in regard to the mortgage indebtedness as if it were his own. As a further security, he bought the land for taxes long before the foreclosure of the mortgage, yet it does not appear any part of the funds used for that purpose were charged to his wards.

Another singular fact is, this record is barren of any evidence that shows that any funds came to the hands of the guardian other than those the stipulation shows he faithfully accounted for, with the interest and proceeds. So far as anything is made to appear in the record, the wards may have received all that was coming to them from their guardian. It will be noticed this bill was not filed until 1872, which was several years after the death of the guardian, who alone could give any definite account of what funds were used in making the Howell loan. After the lapse of so many years from final settlement with the wards after reaching their majority, there ought certainly to be some evidence, other than mere conjecture, that the funds of the estate had not all been accounted for in such settlements to justify a decree for any relief in favor of complainants. That evidence is wanting in this case.

Complainant Miller had resided within a few miles of the land for near thirty-four years, and he admits it had been twenty years since he had heard reports concerning the validity of the title to the land. The deceased ward resided in the same neighborhood after she became of age until her marriage. All that it is now insisted, that affects the title, were then

32—88 ILL.

matters of record, and accessible to parties interested, yet no claim is put forth for more than thirty years after the loan was made on the land, and after the death of the guardian, when, in the nature of things, it is difficult to defend against the charges of a breach of duty preferred against him, by proof of the facts as they actually existed at the time. Equity will not readily lend its aid to establish a claim so stale as the one put forth, without the clearest proof of its justness. No such evidence is found in this record.

The decree in favor of the heirs of the deceased ward will be reversed, and the bill dismissed as to them, and the decree dismissing the bill as to the other complainants affirmed.

*Decree affirmed in part, and in part reversed.*